UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| KENYA MATA, | : | |
| | : | No. |
| PLAINTIFF | : | |
| | : | |
| -against- | : | COMPLAINT |
| | : | |
| BROOKLYN BUREAU OF COMMUNITY SERVICE D/B/A BROOKLYN COMMUNITY SERVICES, | : | **JURY TRIAL DEMANDED** |
| | : | |
| DEFENDANTS. | : | |

Plaintiff Kenya Mata ("Plaintiff"), by and through her attorneys, alleges upon personal knowledge as to herself and her own acts, and upon information and belief as to all other matters, as follows:

**INTRODUCTION**

1. This case arises out of Defendant Brooklyn Bureau of Community Service's ("Defendant") interference and retaliatory discrimination against Plaintiff for taking medical leave in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* Furthermore, in violation of the New York City Human Rights Law ("NYCHRL"), New York City Administrative Code § 8-107 *et seq.*, Defendant discriminated against Plaintiff on the basis of her disability.

2. Plaintiff worked as the Program Director for two of Defendant's supportive housing facilities. Throughout the height of the Covid 19 pandemic in New York City, she kept the facilities operational and protected the residents. However, in March of 2021, Plaintiff's serious health issues forced her to take a medical leave. Defendant responded by terminating her employment while she was on leave, using a pretextual justification for the termination.

1

3. Plaintiff brings claims against Defendant for interference and retaliation in violation of the FMLA, and disability discrimination in violation of the NYCHRL.

4. Plaintiff also brings claims pursuant to the NYCHRL for Defendant's retaliation against her for opposing discriminatory harassment of an employee on the basis of her religion.

**JURISDICTION AND VENUE**

5. This Court has original federal question jurisdiction over Plaintiff's FMLA claims pursuant to 28 U.S.C. § 1331.

6. This Court has supplemental jurisdiction over Plaintiff's NYCHRL claims pursuant to 28 U.S.C. § 1367 because Plaintiff's state law claims are so related to her FMLA claims that they form part of the same case or controversy.

7. Venue is proper within this District pursuant to 28 U.S.C. § 1391, because Defendant's principal office is located in this district. Thus, Defendant resides in this District. Venue is further proper within this District pursuant to 28 U.S.C. § 1391 because the events or omissions giving rise to the claims occurred within this District.

**THE PARTIES**

8. Plaintiff Kenya Mata ("Plaintiff") is an individual and at all times mentioned herein resided in the State of New York.

9. Plaintiff worked for Defendant for approximately nineteen months as a full-time employee working forty or more hours per week until Defendant terminated her employment on April 9, 2021.

10. Defendant Brooklyn Bureau of Community Service d/b/a Brooklyn Community Services ("Defendant") is a New York domestic not-for-profit corporation with its principal office

located in the County of Kings. Defendant's address for the service of process, registered with the New York Secretary of State is The Corporation, 285 Schermerhorn Street, Brooklyn, NY 11217.

11. Defendant's mission, as reported on their Form 990 filed with the New York Secretary of State, is to empower children, youth, adults, and families to overcome the obstacles they face.

12. In 2018, Defendant entered into a strategic alliance with Turning Point Brooklyn, Inc. and its affiliates, including Turning Point Red Hook Housing Development Fund Corp. ("Turning Point Red Hook") and Turning Point Housing Development Fund Corp. ("Turning Point") whereby Defendant fully controls each entity and is the sole member of the Board of Turning Point Brooklyn, Inc. and each affiliate.

13. At all times relevant hereto, Defendant employed Plaintiff as the Program Director of the Turning Point Shelter and Turning Point Red Hook SRO.

14. The Turning Point Shelter is a program is a transitional housing facility for young women aged eighteen to twenty-five located at 968 3rd Avenue, Brooklyn, NY 11232. Plaintiff worked out of an office located in the Shelter.

15. The Turning Point SRO is a low income supportive housing facility located at 113-115 Henry Street, Brooklyn, NY 11201 (Turning Point Red Hook SRO").

## FACTS

16. Plaintiff served as the Program Director of the Turning Point Shelter and Turning Point Red Hook SRO facilities located in Brooklyn, NY, for approximately nineteen months until Defendant terminated her employment on April 9, 2021.

17. Throughout her employment with Defendant, Plaintiff received compliments for the quality of her work from Defendant's management team, including Defendant's Executive

Director, Janelle Farris, Defendant's Chief Operating Officer, Jodi Querbach, and Defendant's Chief Financial Officer, Neil Pierson Flynn.

18. Plaintiff kept both facilities operational and protected the residents during the height of the Covid 19 pandemic in New York City. During this extremely stressful period, Plaintiff dedicated herself to meeting her responsibilities to Defendant and Defendant's clients and worked without time off and without adequate support.

19. Unfortunately, at the beginning of 2021, Plaintiff's health deteriorated.

20. On March 5, 2021, at a follow-up visit, Plaintiff's health care provider gave Plaintiff a note to give to her employer asking that she be given medical leave.

21. The following day, Plaintiff sent an email to Defendant's Chief Human Resources, Maryclare Scerbo, and to her supervisor, Orlando Mendoza, requesting medical leave and attaching the note from her health care provider.

22. Plaintiff began her leave and on March 12, 2021, Ms. Scerbo emailed FMLA paperwork to Plaintiff for her doctor to complete.

23. After a visit to her doctor on March 30, 2021, Plaintiff attempted to speak with Defendant's Human Resources Manager, Sharon Williams, to learn how to return the FMLA paperwork. Plaintiff was concerned that the paperwork contained her confidential medical information and she wanted to make sure that she followed the correct procedure when returning the paperwork so that her confidentiality would be maintained.

24. Finally during the evening of April 5, 2021, Ms. Williams contacted Plaintiff and said that it was important that she speak with Plaintiff. Plaintiff and Ms. Williams had a telephone conversation on April 6, 2021.

25. Ms. Williams had contacted Plaintiff to discuss a situation involving a female employee who was Muslim and had experienced a hostile work environment because of her religion. During the conversation, Plaintiff told Ms. Williams about the steps that she had taken to attempt to remedy the situation and expressed her frustration because she had not received the support that she needed from Defendant's Human Resources department. Plaintiff told Ms. Williams that the organization had failed the employee.

26. At the beginning of the telephone conversation with Ms. Williams, Plaintiff told her that she had been trying to get in touch with her because she needed to speak with her about returning the FMLA paperwork. Ms. Williams then explained that Ms. Scerbo's employment with Defendant had been terminated and that Ms. Williams had been on vacation during the previous week.

27. Ms. Williams responded to Plaintiff's concerns about the proper method of returning the paperwork so confidentiality was maintained by explaining that she was new to FMLA and would have to get back to Plaintiff regarding how to return the paperwork.

28. Three days later, on April 9, 2021, Defendant's Chief Operating Officer, Jodi Querbach, fired Plaintiff through a Zoom conference that was attended by Ms. Querbach, Plaintiff, and her supervisor, Orlando Mendoza.

29. Although the incident had been resolved more than a month previously and Defendant's management had <u>never</u> asked Plaintiff about the incident, let alone disciplined Plaintiff for it, Defendant pretextually told Plaintiff that she was being fired for a very serious incident involving a client.

30. The incident involved a long delay in the return of funds to a client. Plaintiff was not in charge of finances for Defendant and her role did not include the ability to return the money

to the client. On December 2, 2020, the Director of Purchasing was instructed to return the money to the client. Over the course of the next two and one half months, Plaintiff followed up with the Director of Purchasing.

31. Plaintiff also spoke with Mr. Mendoza about the need to return the funds to the client and Mr. Mendoza told Plaintiff that he would take care of it. Ultimately, in the middle of February 2021, the Director of Purchasing's employment was terminated because of the delay.

32. From mid-February 2021 until Defendant fired Plaintiff on March 30, 2021, Defendant never questioned or criticized Plaintiff about the incident. Defendant's stated reason for firing Plaintiff was pretextual.

33. Defendant fired Plaintiff for taking protected leave under the FMLA.

34. Furthermore, Defendant discriminated against Plaintiff on the basis of disability when it fired her because of the health conditions for which she required FMLA leave.

**RETALIATION FOR OPPOSING DISCRIMINATION**

35. In violation of the NYCHRL, Defendant also retaliated against Plaintiff for opposing discrimination against a woman because of her Muslim faith.

36. One of the staff members of the Turning Point Shelter was a Muslim woman who wore a face covering as part of her practice of her religion.

37. The staff member's supervisor reported to Plaintiff.

38. Plaintiff observed the supervisor harassing the staff member because of her religion, including actions such as touching the face covering and asking the staff member if she had a face under there.

39. Plaintiff immediately took action to stop the harassment. She sent the supervisor for cultural competency training and supervisory training. She also asked Defendant's Human

Resources department for the supervisor's personnel file so that she could determine whether the supervisor had previous write-ups and other incidents where he harassed people before deciding on the level of discipline that was appropriate.

40. Human Resources never forwarded the file to Plaintiff.

41. On April 6, 2021, Plaintiff told Defendant's Human Resources Manager, Sharon Williams, that the organization had failed the staff member by not providing the support that Plaintiff needed when she tried to discipline the harassing supervisor.

42. Three days later, Defendant fired Plaintiff, giving a pretextual reason for the termination.

43. As a result of Defendant's interference with her rights under the FMLA discrimination and retaliation under the FMLA and the NYCHRL, Plaintiff has suffered and continues to suffer severe emotional distress.

44. Furthermore, Plaintiff has suffered significant financial loss because of Defendant's intentional, illegal actions.

**FIRST CAUSE OF ACTION**
**(Family and Medical Leave Act Violations)**

45. Plaintiff realleges and incorporates by reference all previous paragraphs as if they were set forth again herein.

46. Section 102(a)(1)(D) of the FMLA, requires that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).

47. Section 105(a) of the FMLA, protects employees in the exercise of these rights: "(1) Exercise of rights. It shall be unlawful for any employer to interfere with, restrain, or deny

7

the exercise of or the attempt to exercise, any right provided under this title. (2) Discrimination. It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a).

48. Defendant operates numerous facilities in the County of Kings in the State of New York and employs more than the fifty (50) employees within seventy-five (75) miles of the location within which Defendants employed Plaintiff.

49. On March 6, 2021, when Plaintiff informed Defendant that she had a serious health condition and needed a medical leave, she had been employed by Defendants for more than a year and worked more than 1250 hours during the previous year.

50. After Plaintiff requested medical leave, Defendant verified that she was eligible for leave under the FMLA.

51. Plaintiff suffered from a serious health condition as that is defined by the FMLA and its accompanying regulations. Plaintiff's health issues required the continuing care of a medical professional and required a regimen of continuing treatment. 29 C.F.R. § 825.102.

52. Defendant interfered with Plaintiff's exercise of her rights under the FMLA by not informing her of the proper way to return the FMLA paperwork after Plaintiff asked Human Resources for instructions and by firing her before her leave was completed, thereby not allowing her to return to her position after her leave was completed.

53. Defendant retaliated and discriminated against Plaintiff for taking FMLA leave by firing Plaintiff because she had taken FMLA leave and giving a pretextual reason for the termination.

54. As a result of Defendant's interference with Plaintiff's exercise of her rights under the FMLA and its retaliation and discrimination against her when she tried to exercise these rights,

Plaintiff suffered and continues to suffer substantial losses, including past and future earnings and employment benefits.

55. Moreover, Plaintiff suffered and continues to suffer serious emotional distress as a result of Defendants' illegal actions.

56. Defendants' violation of the FMLA was willful in that they either knew that their actions violated Plaintiff's rights under the FMLA or acted with reckless disregard as to whether they violated Plaintiff's rights under the FMLA.

57. Plaintiff seeks damages in the amount of her back and front pay and benefits, statutory liquidated damages, reasonable attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## SECOND CAUSE OF ACTION
### (Discrimination on the Basis of Disability – NYCHRL)

58. Plaintiff realleges and incorporates by reference all previous paragraphs as if they were set forth again herein.

59. Plaintiff is disabled within the definition of the NYCHRL § 8-102. Plaintiff requested the accommodation of a medical leave of absence.

60. Defendant discriminated against Plaintiff based on her disability in violation of the NYCHRL § 8-107(1)(a) and (15)(a).

61. Section 8-107(7) of the NYCHRL prohibits retaliation and/or discrimination against any person who engages in protected activity under the NYCHRL, including the protected activity of requesting an accommodation for a disability.

62. Section 8-107(19) of the NYCHRL states in relevant part: "Interference with protected rights. It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with,

any person in the exercise or enjoyment of . . . any right granted or protected pursuant to this section."

63. Defendant violated § 8-107(7) and (19) by interfering with Plaintiff's exercise of her rights under the NYCHRL and discriminating against her in retaliation for requesting to exercise her rights under the NYCHRL.

64. As a proximate result of Defendant's actions against Plaintiff on the basis of her disability and request for accommodation, she suffers and continues to suffer substantial losses, including earnings and employment benefits.

65. As a further proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer emotional distress, the physical effects of stress and mental anguish, and other incidental and consequential damages.

## THIRD CAUSE OF ACTION
### (Retaliation for Opposing Discrimination – NYCHRL)

66. Plaintiff realleges and incorporates by reference all previous paragraphs as if they were set forth again herein.

67. The NYCHRL prohibits an employer from retaliating against an employee because she spoke out and opposed discrimination. *See* N.Y. City Admin. Code § 8(107)(7).

68. Plaintiff opposed discrimination against a staff member on the basis of her religion.

69. Three days later, in violation of the NYCHRL, Defendant retaliated against Plaintiff for her opposition to discrimination by firing her.

70. As a proximate result of Defendant's retaliation against Plaintiff for opposing discrimination, she suffers and continues to suffer substantial losses, including earnings and employment benefits.

71. As a further proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer emotional distress, the physical effects of stress and mental anguish, and other incidental and consequential damages and expenses.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for relief as follows:

(a) An award of back and front pay for violations of the FMLA and the NYCHRL;

(b) An award of liquidated damages pursuant to the FMLA;

(c) An award of compensatory and punitive damages under the NYCHRL;

(d) Costs and expenses of this action, together with reasonable attorneys' fees;

(e) Pre-Judgment and post-judgment interest, as provided by law; and

(f) Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues.

DATED: September 1, 2021   Respectfully submitted,

HARRISON, HARRISON & ASSOCIATES, LTD.

 /s/ David Harrison
David Harrison, Esq.
dharrison@nynjemploymentlaw.com
Julie Salwen, Esq.
jsalwen@nynjemploymentlaw.com
110 State Highway 35, Suite 10
Red Bank, NJ  07701
(718) 799-9111 Phone
(718) 791-9171 Fax
*Attorneys for Plaintiff*